Floyd W. Bybee, #012651
BYBEE LAW CENTER, PLC
2473 S. Higley Rd., Suite 104-308
Gilbert, AZ 85295
(480) 756-8822
floyd@bybeelaw.com

Carlin J. Phillips (seeking *pro hac vice* admission)
BBO# 561916
PHILLIPS & GARCIA, P.C.
13 Ventura Drive
N. Dartmouth, MA 02747
(508) 998-0800
cphillips@phillipsgarcia.com

Joseph F. deMello (seeking *pro hac vice* admission)
BBO# 546017
LAW OFFICE of JOSEPH F. deMELLO, P.C.
71 Main Street
Taunton, MA 02747
508-824-9112
josephdemellolaw@verizon.net

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
|  | ) | C.A. No. |
| Sharon Newman and | ) |  |
| Henry Newman, | ) |  |
|  | ) |  |
| Plaintiffs, | ) | COMPLAINT |
|  | ) |  |
| v. | ) | (Jury Trial Demanded) |
|  | ) |  |
| Bank of America, N.A., | ) |  |
| BAC Home Loans Servicing, L.P., | ) |  |
| and ReconTrust Company, N.A., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## INTRODUCTION

1.      For over a year, Mr. and Mrs. Newman have been repeatedly threatened with, collection, foreclosure and the auction of their Willcox, Arizona home by Bank of America and its servicing subsidiary, BAC Home Loans Servicing despite having no loan with the BOA.  After receiving the first collection letter from the bank, the Newman's notified BOA of the error and then provided the bank with wire transfer information on numerous occasions showing BOA that the loan on which it was basing its collection actions had been paid off.  Despite the Newman's efforts, which included a complaint to the OCC, BOA continued its foreclosure and scheduled a June 24, 2010 auction date for the Newman's home.  Even after BOA confirmed in writing with the FDIC that the Newmans had no loan with BOA, the defendants continued their collection efforts.  As of this filing, the defendants are still mailing the Newmans' collection letters indicating that the Newmans' have a "seriously delinquent" loan with an unpaid balance of $83,465.  The Newman's home is still publically listed as a foreclosed home and potential buyers continue to visit, drive by and trespass on their property.  To remedy the damage caused by the Defendants and permanently stop the foreclosure and auction of their home, Mr. and Mrs. Newman bring the following claims: 1) wrongful foreclosure; 2) violations of ARS § 33-420 for filing an invalid Notice of Trustee Sale with the county recorder's office; 3) violations of the Fair Debt Collection Practices Act; 4) negligence; 5) the negligent infliction of emotional distress; 6) the intentional infliction of emotional distress; 7) libel; and 8) invasion of privacy.

**PARTIES**

2.      The Plaintiffs, Henry and Sharon Newman are husband and wife who reside in Willcox, Arizona.

3.      The defendant Bank of America ("BOA") is a corporation headquartered at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina 28255.

4.      The defendant BAC Home Loan Servicing, L.P. ("BAC") is a loan servicer for and subsidiary of defendant BOA with a principal place of business of 400 Countrywide Way, Simi Valley, CA 93065.

5.      The defendant ReconTrust Company, N.A. ("ReconTrust') is a wholly owned subsidiary of defendant BOA that offers foreclosure related services to BOA. ReconTrust has a principal place of business of 2380 Performance Drive, Richardson, TX 75082.

**JURISDICTION AND VENUE**

6.      This court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) as there exists diversity of all parties and the amount in controversy exceeds $75,000.  In addition, the Plaintiffs allege a federal claim under the Fair Debt Collection Practices, 15 U.S.C. §1692k(d).  The Defendants all have sufficient contacts with Arizona as they service and foreclose on numerous loans in the state.

7.      Venue is properly laid as all Defendants directly and/or as agents, representatives and/or employees of BOA do business in this jurisdiction or otherwise

3

have substantial contacts within this jurisdiction.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### *The Newmans' Refinancing of Their TBW Loan*

8.     Mr. and Mrs. Newman, both 66 years old, own and live in their home in Willcox, Arizona.  They have lived there for 26 years.  Their house is situated on five acres of land in a remote area approximately eight miles from the center of Willcox.

9.     Mr. Newman is a disabled military veteran with post traumatic stress disorder whose primary sources of income are Social Security Disability and military disability benefits and a modest union retirement check.  Mrs. Newman receives a monthly Social Security check.  These fixed sources of income are all the money the Newmans receive to support themselves and pay their bills.

10.     The Newmans entered into a note and deed of trust on July 20, 2007 ("July 2007 Loan") with Taylor, Bean & Whitaker Mortgage Company ("TBW").

11.     The Newmans refinanced their loan with TBW on or about July 24, 2009 ("July 2009 Loan") in an effort to obtain a better interest rate.

12.     The original July 2007 Loan was paid-off as part of the refinancing.  The title company which handled the refinancing paid off the outstanding balance of the July 2007 Loan by wire transferring the payoff funds from the new lender, Platinum Community Bank to TBW's bank, Colonial Bank.  The title company has confirmed this pay-off with documentation of the receipt of the wire transfer.

13.     After the refinancing, the Newmans were contacted that Roundpoint

4

Mortgage Servicing Corporation would be their new loan servicer.  The first payment on the new, refinanced loan was due on September 1, 2009.

14.     Shortly after the Newmans refinanced, TBW was raided and then shut down by federal regulators on August 4, 2009.  TBW filed for bankruptcy in Florida shortly after being shut down.

15.     On August 14, 2009, twenty days after the Newmans' refinancing, Colonial Bank was closed by the Alabama State Banking Department and the FDIC was appointed its receiver.

16.     On September 4, 2009, the Office of Thrift Supervision closed Platinum Community Bank and appointed the FDIC its receiver.

**Defendants' Collection, Foreclosure and Auction Attempts on the Paid-Off TBW Loan**

17.     In August of 2009, after the Newman's refinanced, they began receiving collection calls from BAC regarding their paid-off TBW loan.  Despite the Newmans informing the caller that they had no loan with BOA, that the TBW loan to which the caller was referencing had been paid off and the Newmans other efforts to inform BOA of its error (infra), the calls continued on a regular basis for approximately eight months – from August of 2009 until April of 2010 when the Newmans retained an attorney to deal with BOA.

18.     In response, Mrs. Newman made numerous calls to BAC over this time period, spending hours of time on hold, informing BAC that she had no loan with BOA

5

and that the July 2007 TBW loan had been paid off.

19.     In addition to the collection calls, BAC sent the Newmans a letter dated October 7, 2009 which stated in part: "We want to help you save your home.  If the reason for the failure to pay was due to a temporary situation that will soon be corrected, we may be able to work with you to arrange for repayment on terms you can afford."

20.     Mrs. Newman responded by calling BAC informing it that it had no right to foreclose and also by sending BAC a letter with the HUD Settlement Statement from the refinancing showing the pay-off of the prior TBW loan.

21.     BAC acknowledged Mrs. Newman's correspondence but still sent the Newmans a November 6, 2009 letter entitled "Notice of Intent to Accelerate" stating the loan was in "serious default" and demanding the payment of $2,220.74 in monthly loan charges and late fees. Exhibit 1.  This Notice further stated:

> Your loan is in default. Pursuant to your loan documents, BAC Home Loans Servicing, LP may, enter upon and conduct an inspection of your property.  The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant.  If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken.  **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument and as permitted by law.**

Exhibit 1, ¶ 6 (bold in original).

22.     On or about November 9, 2009, Mrs. Newman sent BAC the Colonial Bank wire transfer information evidencing that the pay-off had been received on the July

2007 loan.

23.    BAC sent the Newmans a letter on November 21, 2009 indicating that it had received the pay-off information provided by Mrs. Newman, however "the documents you have provided us is (sic) not sufficient."  Instead of researching the loan on its end to establish that it had a legal right to collect from the Newmans and foreclose on their home, BAC indicated that the Newmans must provide BAC with a "front and back copy of a cleared check or a bank source receipt . . . along with a copy of your Payoff Demand from Taylor Bean and Whitaker."  BAC further stated that, "Your research will now be closed and will be re-opened upon receipt of this required back-up."

24.    On or about November 25, 2009, BAC also sent the Newmans an "Escrow Account Review" statement indicating an escrow shortage of $292.24 and a monthly statement indicating a principal balance owed of $83,465.15 with a past due amount of $2,163.06.

25.    The Newmans received a letter from BAC dated December 4, 2009 indicating once again that it had received information from Mrs. Newman however, "in order to research the payoff funds made to the previous lender we need proof and back-up i.e. front and back copy of the check and/or a receipt for a wire payment showing the funds being transferred to Taylor Bean and Whitaker.  Once again, neither BAC or BOA researched whether it had any legal right to collect any monies from the Newmans and foreclose on their home.

26.    On or about December 29, 2009, BAC notified the Newmans that it had no evidence of hazard insurance and the Newmans had to provide BAC with evidence of coverage within 30 days.

27.    The Newmans next received a statement from BAC for a payment due January 1, 2010 indicating a past due amount of $2,884.08.

28.    On January 12, 2010, BAC sent the Newmans a second letter regarding homeowner's insurance indicating that it had "not received verification of acceptable hazard (homeowner's) insurance information" and if proof of acceptable coverage was not received by 2/16/2010, BAC was going to force place coverage on the property and add the costs of insurance onto the amount due.

29.    On or about January 28, 2010, Mrs. Newman sent more detailed wire transfer information to BAC.

30.    In a letter dated February 5, 2010, BAC again acknowledged Mrs. Newman's demand that BOA had no loan with the Newmans, however, BAC could not conduct research without proof of the pay-off.

31.    BAC continued to send the Newmans statements for February and March with the March statement showing a past due amount of $4,353.56.

32.    BAC also forced place hazard insurance on the Newmans home with Balboa Insurance Company on or about February 12, 2010.

33.    In a letter dated March 4, 2010, BAC once again acknowledged receipt of documents from Mrs. Newman showing that the loan was paid off but, once again, BAC

8

indicated the documents provided were not "sufficient", demanded a copy of the "wire

transfer" or a copy of the front and back check used to payoff the loan" and closed its

investigation until it received further documentation.

34.    On or about March 19, 2010, the Newmans received a letter from BAC

entitled **"STATEMENT OF BREACH OR NON PERFORMANCE AND**

**ELECTION TO SELL UNDER DEED OF TRUST ARIZONA"** indicating that the

Newman's house was being sold at auction. Exhibit 2.  The statement of breach

identified the July 2007 paid-off deed of trust as the operative security interest and

identified BAC Home Loans Servicing, LP as the "Current Beneficiary."  A "Joseph

Oliver" appears to have signed for both BAC as beneficiary and Recontrust Company,

N.A. as trustee.  Neither signature is notarized and the notary statement on the document

purportedly signed on behalf of Recontrust Company is entirely blank. Exhibit 2, p. 3.

35.    Accompanying the statement of breach was a second document entitled

"**Notice of Trustee's Sale Arizona**" indicating that the Newmans home would be sold

on June 24, 2010 at 11:00 A.M. on the main steps of the Cochise County Courthouse in

Brisbee, Arizona. Exhibit 3.

36.    Getting more and more concerned, Mrs. Newman send correspondence to

the BOA President, Senior Vice President and Assistant Vice President complaining of

BOA's collection efforts and, once again, informing BOA that her July 2007 loan with

TBW had been paid off.

9

37.    The Newmans received a letter dated March 15, 2010 from BAC indicating that, "We recently received your request for financial assistance with your loan.  BAC Home Loans Servicing, LP understands your situation and would like to offer its assistance in helping bring your loan current."  The Newmans had not requested any kind of financial assistance from BOA.

38.    Desperate to protect her home from auction and frustrated with getting little response from BAC and BOA, on March 22, 2010, Mrs. Newman filed an online complaint with the OCC.

39.    Seemingly unrelated to their OCC complaint, the Newmans received a letter this time dated March 25, 2010 from BAC again stating that, "We recently received your request for financial assistance with your loan.  BAC Home Loans Servicing, LP understands your situation and would like to offer its assistance in helping bring your loan current."  The Newmans again had not requested any kind of financial assistance from BOA.

40.    The FDIC, as the receiver for Platinum Community Bank, apparently contacted BAC about the Newmans' OCC complaint.

41.    Unknown to the Newmans at the time, in a March 31, 2010 e-mail to the Receiver, Seth Downing of BOA acknowledged that the loan BOA was pursuing against the Newmans had been paid off.  The e-mail stated in relevant part:

> I received an email from David Comstack yesterday in regards to Mr. Newman's property at 705 West Saguaro Rd. Wilcox, AZ 85643.  Please be advised that BAC has stopped all foreclosure activities on Mr. Newman's loan, as our review

showed the loan as a duplicate servicing release as well as having been paid off with the previous servicer.

Exhibit 4.

42.     The Newmans had been requesting a simple loan file review for over seven months with little or no response from BOA.  After the correspondence from the FDIC, BOA was able to research the Newmans' complaint in under a day.

43.     Neither BOA or BAC communicated the results of their loan file review to the Newmans orally or in writing.  BOA also failed to share the content of its correspondence to the FDIC with the Newmans.  As far as the Newmans' knew, their house was being foreclosed on and would be auctioned off on June 24 on the courthouse steps.

**BOA and BAC Fail To Stop Collection, Foreclosure and Auction Efforts**

44.     Despite BOA's March 31, 2010 acknowledgment in writing to the FDIC that BOA held no security interest in the Newman's home, BAC's and BOA's collection, foreclosure and auction efforts continued.

45.     The Newmans continued to receive collection calls.  On or about April 12, 2010, Mrs. Newman received a call from Michelle Maxie in the Office of the President of BOA informing her that her loan had been turned over to the legal department and she was not sure who was handling it.  She also informed Mrs. Newman that she would "place a block" on letters being sent to the Newmans.

46.     On or about April 13, 2010, Mrs. Newman received a call from Joshua

Owens from the Office of the President of BOA.  Mr. Owens informed Mrs. Newman

that he was now handling her file, and she needed to resend all documentation to him

because he could not locate any of the documentation she had been sending BOA over

the last seven months.

47.    On April 13, 2010, the Newmans received an April account statement from

BAC indicating that their loan "remains seriously delinquent" and listing a past amount

due of $5,047.14 and a loan balance of $83,465.15.  They also received a document

entitled an "Escrow Account Review."

48.    On or about April 14, 2010, counsel for the Newmans sent BOA and BAC

a certified letter informing both defendants that the Newmans had no loan with BOA,

that both BOA and BAC were to cease and desist from any further collection and

foreclosure actions, requesting, pursuant to the Fair Debt Collection Practices Act, that

BOA and BAC have no further contact with the Newmans and demanding written

confirmation that all collection and foreclosure actions had been terminated.

49.    Despite counsel's letter, BAC sent the Newmans, not their counsel, a letter

dated April 14, 2010 acknowledging receipt of "your recent correspondence."

50.    BAC sent the Newmans another letter dated April 20, 2010, indicating that

it had received "your request regarding research that (sic) loan was paid off to your

previous lender Taylor bean (sic) and whiter (sic)" and that the Newmans were to

provide BAC with "the settlement statement (HUD-1) associated with the payoff of this

loan."  The letter also indicated, like the others, that BAC was closing its research until it

12

received the paperwork.

51.     On April 23, 2010, Joshua Owens from the Office of the President of BOA called the Newmans directly and spoke to Mrs. Newman.  Mrs. Newman instructed Mr. Owens to call her attorney.

52.     Counsel for the Newmans faxed BAC again on April 27, 2010 requesting no further contact with the Newmans, attaching the HUD-1 and again demanding written confirmation that BOA had ceased all collection and foreclosure actions.

53.     On the next day, April 28, 2010, the Newmans counsel faxed Joshua Owens from the Office of the President of BOA a letter, attaching wire transfer pay-off information and BAC's correspondence to the FDIC admitting the loan had been paid off.  Counsel's letter requested written confirmation that all foreclosure and auction proceedings had been permanently terminated.

54.     On or about April 30, 2010, Joshua Owens called Mrs. Newman directly informing her that the documentation he received was sufficient to stop the auction but that BOA would not provide written assurance to the Newmans that the foreclosure was permanently terminated.  Mr. Owens also indicated that he would see that all collection calls and letters to the Newmans were stopped.

55.     Shortly after this call, the Newmans received a letter from BOA dated April 29, 2010 acknowledging "your inquiry pertaining to the payoff of this mortgage account number *******.  It has been forwarded to the payoff department."  The letter did not acknowledge that the loan was paid off but rather stated ambiguously, "The

information you provided pertaining to the payoff of this loan has been documented in our system."

56.    On or about May 6, 2010, the Newmans, not their counsel, received by mail a "Cancellation of Notice of Sale Arizona" signed by ReconTrust Company, N.A. which had been recorded in the Cochise County Recorders Office.

57.    Neither BAC, BOA or Recontrust has filed a cancellation, termination or withdrawal of the foreclosure action against the Newmans or filed a release of the deed of trust.

58.    On or about June 5, 2010, BAC sent the Newmans another collection letter on behalf of BOA.  The letter demanded a $6,489.18 delinquency with a total loan amount of $83,465.18.  The collection letter stated:

> **Please give this matter your most urgent attention**.  Please pay the total amount due immediately.  BAC Home Loan Servicing, LP will proceed with collection action until your account is brought fully current, and you will be responsible for all cost incurred in this process to the full extent permitted by law.

59.    The Newmans are still receiving collection letters from BAC with the latest August collection letter indicating a past due amount of $8,496.03 with a principal loan balance of $83,465.15.  Exhibit 5.

60.    In addition to still receiving collection letters from BAC, the Newmans' home is still listed in foreclosure listings on the Internet.  Since the Defendants first listed the Newman's home for auction, they have had potential buyers driving out to their remote property, pulling down the driveway, trespassing on their property and sometimes

sitting in front of their house in their cars while they view the house.

61.     They are also aware of potential buyers driving by and visiting their property while they are not home.  A neighbor has reported cars sitting outside the Newmans' home while they are not there.  Most recently, the Newmans' granddaughter and great grandson, who were at the house when the Newmans were not home, were confronted by a trespasser who drove all the way down the Newmans' 460 foot driveway to the house.  Afraid, the granddaughter called Mrs. Newman immediately.  When the trespasser saw that there was someone in the house, he left.  Trespassers continue to approach the Newmans' remote home because BOA and BAC publically recorded the notice of sale in the public record and it has been picked-up by auction listing services, such as online foreclosure listings.

62.     The repeated trespassers to the Newmans' property, any of whom could be there for reasons other than purchasing a home at auction, have caused fear and a loss of security and safety for the Newmans.  Moreover, the Newmans are now hesitant to leave their home as they are afraid of a possible break-in or theft by trespassers or lock-out of their home by BAC or BOA.

63.     In addition, as of April 30, 2010, the Newmans have not received any direct collection calls.  However, BOA's alleged loan is still listed on the Newmans' credit report as an existing debt of $83,465.

**COUNT 1**
**Wrongful Foreclosure**
**(As to All Defendants)**

64.    The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

65.    The Plaintiffs owned their home and property.  The Plaintiffs had no loan or deed of trust with the Defendants.  Accordingly, the Defendants had no legal right to collect any monies from the Plaintiffs or to foreclose and attempt to sell the Plaintiffs home and property at auction.

66.    The Defendants had a duty to exercise fairly and in good faith the power of sale in any deed they claimed was to secure a debt with the Plaintiffs.  The Defendants breached that duty by a) instituting foreclosure proceedings on a paid-off loan; b) failing to conduct due diligence, even after repeated notice by the Plaintiffs that they had no loan or valid security instrument with the Defendants, before instituting foreclosure and auction proceedings; c) failing to stop foreclosure and auction proceedings after being provided with proof of the pay-off and reporting the loan as paid-off to the FDIC; d) failing to permanently terminate foreclosure and auction proceedings after repeated notice of their error and admitting to the FDIC that the Plaintiffs loan had been paid-off; and e) continuing to collect on an invalid debt and representing to the Plaintiffs that they still possess a right to collect and foreclose on the Plaintiffs' home.

67.    The Plaintiff have been forced to fight off a wrongful foreclosure and loss of their home for over eight months.  The auction date of June 24, 2010 has

been canceled by BOA, however, no notice of this fact has been made public, nor have the Defendants cancelled the foreclosure proceedings and/or made the termination of the foreclosure public.  As a result, trespassers continue to come onto the Plaintiffs property at all times of the day.

68.    The Plaintiffs, who have lived in the home for 26 years and who are on fixed incomes, have feared, and still fear, the loss of their home.  The Plaintiffs have endured over eight months of fear, anger, frustration, harassing collections call, notices and letters and the loss of their security and privacy.  The stress caused by the foreclosure has caused the Newmans tremendous anxiety and has been particularly hard on Mr. Newman, as the increased stress of losing his home has exacerbated the post traumatic stress he suffers from military service in the Vietnam War.

69.    The anxiety and stress from the foreclosure has had such an affect on Mr. Newman that Mrs. Newman believed the increased stress would literally kill him.  Mrs. Newman has had to care for her husband, deal with her own fears and anxieties of losing her home while fighting off the Defendants' foreclosure and auction attempts.  Mrs. Newman has suffered from anxiety attacks and the loss of sleep.

70.    The Plaintiffs were damaged as a direct and proximate result of the acts and omissions of the Defendants, their agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request injunctive relief in the following form:

17

a) an order permanently stopping the Defendants' foreclosure and auction; b) an order requiring that the Defendants record a release and/or discharge of the July 2007 TBW loan and deed of trust; c) an order requiring the Defendants to pull and/or take down any and all listings of foreclosure and/or auction regarding the Plaintiffs' property; d) a written rescission of the foreclosure and auction, which states the Defendants error, published in the local newspapers and posted at the local courthouse where the auction was to be held; e) an order compelling the Defendants to remove any and all negative reporting from the Plaintiffs credit and to report the correct date in which the Plaintiffs paid-off the July 2007 loan.  The Plaintiffs further request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

### COUNT 2
### Violations of ARS § 33-420
### (As to All Defendants)

71.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

72.     On March 17, 2010, the Defendant, ReconTrust, on behalf of BOA and BAC, recorded a Notice of Trustee Sale in the Cochise County Recorder's Office.

73.     By the time of this recording, the Defendants knew or had reason to know the Notice of Sale was invalid because the July 2007 TBW loan had been paid

off and that BOA held no security interest in the property.

74.    BAC and BOA's loan files, as well as the notifications and documents provided to BOA by the Newmans, clearly established, well before the filing of the Notice of Trustee Sale, that the Defendants had no legal interest in the Newman's property.

75.    A.R.S. § 33-420(A) states as follows:

[a] person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

76.    The Defendants filing of the Notice of Trustee Sale, which set the Newmans' home for auction on June 24, 2010, was groundless, contained material misstatements, false claims and was otherwise invalid.

77.    The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendants, their agents, contractors and/or employees.  In addition to the cloud on the title to their property, after the filing of the Notice of Sale, the Newmans fear of losing their home increased significantly.  Moreover, the Notice of Sale held the Newmans out to the public as deadbeats who do not pay their debts and forced them to endure the invasion of their privacy and security from repeat trespassers interested in a home auction.  In addition, filing the invalid Notice of

Sale caused the Newmans tremendous anxiety, frustration, fear and anger which they never should have been forced to endure.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

<u>**COUNT 3**</u>
**Violations of the Fair Debt Collection Practices Act ("FDCPA")**
**(As to BAC and BOA)**

78.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

79.     The Plaintiffs were "consumers" under the FDCPA.

80.     The Defendants were all "debt collectors" as that term is used under the FDCPA.  The Defendants held themselves out as alleged assignees and/or servicers of a debt owed by the plaintiffs and at the time the Defendants acquired the alleged debt the debt was allegedly in default as evidenced by the Defendants' collections calls regarding same.  The alleged debt on which the Defendants base their collection, foreclosure and auction attempts was paid off by its terms before the Defendants acquired their alleged interest in same.

81.     The Defendants never extended any credit to the Plaintiffs and at no time acquired any enforceable legal rights in any note or security instrument signed

by the Plaintiffs.  For eight months, the Defendants attempted to collect on an alleged debt for which they had no legal basis in fact or law to pursue.  The debt they so aggressively attempted to collect simply no longer existed.

82.     In addition, the Defendants first contact and all subsequent contacts with the Plaintiffs were attempts to collect a debt that it alleged was in default. From the beginning, the Defendant BAC, presumably on behalf of BOA, called and wrote the Newmans repeatedly in an attempt to collect what it claimed to be past due payments.  The Defendant ReconTrust, on behalf of BOA and as a related company, notified the Newmans of auction proceedings and scheduled their house for auction.

83.     Moreover, BOA and BAC continued with collection, foreclosure and auction attempts after being notified by the Newmans that the loan on which BOA was trying to collect had been paid off.  BOA and BAC even failed to stop ongoing collection and foreclosure proceedings after admitting to the FDIC Receiver that the Newman's July 2007 loan with TBW had been paid off.

84.     The FDCPA specifically proscribes "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. It also proscribes the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

85.     The Defendants violated the following sections of the FDCPA: a) 1692c(a)(2) (communication with consumer represented by counsel); b)

21

1692d(1)(use or threat of use of criminal means to harm person, reputation, or property of person; under ARS 33-420 it is a misdemeanor to record a false claim); c) 1692e (prohibition against general false and misleading representations); d) 1692e(2)(A) (false representation of character, amount or legal status of a debt); e) 1692e(4) (representation that nonpayment will result in sale of property); f) 1692e(5)(the threat to take any action that cannot legally be taken); g) 1692e(8)(communicating to any persons credit information which is known or should be known to be false and failure to communicate the fact debt is disputed); h) 1692e(10) (use of false representation or deceptive means to collect a debt; i) 1692f(1)(use of unfair or unconscionable means to collect or attempt to collect any debt, including the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law); j) 1692f(6)(threatening to take non-judicial action to effect disposition of property when there is no right to do so); k) 1692g (failure to provide verification of the debt).

86.     The collection, foreclosure and auction attempts by the Defendants had no legal basis in fact or law.  The Defendants' falsely represented the character, amount and legal status of an alleged loan and then threatened the Newmans with foreclosure and acted on their threats by setting the Newmans' home for auction on June 24, 2010.  The Defendants acts and omissions in collecting and foreclosing on a debt and security instrument that did not exist violated the FDCPA.  The

22

outrageous nature of the Defendants conduct was compounded by the following facts: a) over an eight month period, the Newmans repeatedly notified BAC that the loan was paid off, b) the Defendants failed to investigate the legal status of the loan in response to the Newmans' notifications; c) when BAC and BOA finally investigated the status of the Newmans' loan at the request of the FDIC, it took them less than a day to determine that the loan was paid off and the alleged debt was not valid; d) the Defendants failed to permanently stop collection and foreclosure even after admitting to the FDIC that the loan had been paid off; e) the Defendants have failed to remove the Newmans' property from foreclosure listings and/or issue a public rescission of the foreclosure and accurately report the paid-off status of the alleged debt to the credit bureaus.

87.     The Newmans' have been damaged as a direct and proximate result of the Defendants violations of the FDCPA.  In addition to the cloud on the title to their property and any negative credit reporting created by these invalid collection and foreclosure attempts, the Newmans have lived in fear of losing their home for eight months, have been held out to the public as deadbeats who do not pay their debts and have been forced to endure the invasion of their privacy and security from repeat trespassers interested in a home auction.  The acts and omissions of the Defendants have caused the Newmans tremendous anxiety, frustration, fear and anger which they never should have been forced to endure.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count

23

and further request that they be awarded actual damages in an amount to be proven at trial, statutory damages, attorney's fees and costs, as well as any pre-and post-judgment interest on any award.

## COUNT 4
### Negligence
### (As to All Defendants)

88.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

89.     The Defendants owed a duty to the Plaintiffs to act as a reasonable and prudent servicers/ agents/lenders during any collection, foreclosure and auction proceedings, which included the obligation to verify that they were foreclosing on a property to which there existed a valid debt and security interest.

90.     The Defendants were on actual and/or constructive notice from the loan file and/or information in the possession of the Defendants and from the direct notice provided by the Plaintiffs that the loan on which they were trying to collect had been paid-off.

91.     The Defendants, their agents, contractors and/or employees breached the duty they owed to the Plaintiffs by proceeding with collection, foreclosure and auction proceedings against the Plaintiff' on a loan that had been paid off and failing to conduct the necessary and required due diligence before starting collection.

92.     Moreover, once the Defendants, their agents, contractors and/or employees finally determined that the Plaintiffs loan had been paid off, they had a

24

duty of reasonable care to permanently stop the collection, foreclosure and auction proceedings and failed to do so.

93.    The Plaintiffs were damaged as a direct and proximate result of the actions of the  Defendant, its agents, contractors and/or employees.  In addition to the cloud on the title to their property and any negative credit reporting created by these negligent collection and foreclosure attempts, the Newmans have lived in fear of losing their home for eight months, have been held out to the public as deadbeats who do not pay their debts and have been forced to endure the invasion of their privacy and security from repeat trespassers interested in a home auction.  The acts and omissions of the Defendants have caused the Newmans tremendous anxiety, frustration, fear and anger which they never should have been forced to endure.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial and pre-and post-judgment interest on any award.

### COUNT 5
### Negligent Infliction of Emotional Distress
### (As to All Defendants)

94.    The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

95.    The Defendants owed a duty to the Plaintiffs to act as a reasonable and prudent servicers/ agents/lenders during any collection, foreclosure and auction proceedings, which included the obligation to verify that they were foreclosing on a

property to which there existed a valid debt and security interest.

96.    The Defendants were on actual and/or constructive notice from the loan file and/or information in the possession of the Defendants and from the direct notice provided by the Plaintiffs that the loan on which they were trying to collect had been paid-off.

97.    The Defendants, their agents, contractors and/or employees breached the duty they owed to the Plaintiffs by proceeding with collection, foreclosure and auction proceedings against the Plaintiff' on a loan that had been paid off and failing to conduct the necessary and required due diligence before starting collection.

98.    Moreover, once the Defendants, their agents, contractors and/or employees finally determined that the Plaintiffs loan had been paid off, they had a duty of reasonable care to permanently stop the collection, foreclosure and auction proceedings and failed to do so.

99.    The Defendants actions were taken with a gross disregard for the Plaintiffs' rights and were so severe and outrageous so as to shock the conscience and cause the Plaintiffs severe emotional distress, embarrassment and ridicule.

100.    The Plaintiffs were damaged as a direct and proximate result of the actions of the  Defendant, its agents, contractors and/or employees.  The Newmans have lived in fear of losing their home for eight months, have been held out to the public as deadbeats who do not pay their debts and have been forced to endure the invasion of their privacy and security from repeat trespassers interested in a home

auction.  They have avoided leaving their property unattended over concern for trespassers and BOA inspecting and locking them out of their home.

101.    The acts and omissions of the Defendants have caused the Newmans tremendous anxiety, frustration, fear and anger which they never should have been forced to endure.  Mrs. Newman's stress has manifested in lost sleep and episodes of anxiety.  She has also had to watch her husband's condition deteriorate.  The stress of the pending foreclosure has significantly aggravated Mr. Newman's underlying PTSD so much that he has sought counseling to deal with the increased anxiety.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial and pre-and post-judgment interest on any award.

## COUNT 6
### Intentional Infliction of Emotional Distress
### (As to BOA and BAC)

102.    The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

103.    The Defendants owed a duty to the Plaintiffs to act as a reasonable and prudent servicers/ agents/lenders during any collection, foreclosure and auction proceedings, which included the obligation to verify that they were foreclosing on a property to which there existed a valid debt and security interest.

104.    The Defendants were on actual and/or constructive notice from the loan file and/or information in the possession of the Defendants and from the direct

notice provided by the Plaintiffs that the loan on which they were trying to collect had been paid-off.

105.   The Defendants, their agents, contractors and/or employees breached the duty they owed to the Plaintiffs by proceeding with collection, foreclosure and auction proceedings against the Plaintiff' on a loan that had been paid off and failing to conduct the necessary and required due diligence before starting collection.

106.   Moreover, once the Defendants, their agents, contractors and/or employees finally determined that the Plaintiffs loan had been paid off, they had a duty of reasonable care to permanently stop the collection, foreclosure and auction proceedings and failed to do so.

107.   The Defendants actions were taken with intent and/or a gross and reckless disregard for the Plaintiffs' rights and were so severe and outrageous so as to shock the conscience and cause the Plaintiffs severe emotional distress, embarrassment and ridicule.

108.   The Plaintiffs were damaged as a direct and proximate result of the actions of the  Defendant, its agents, contractors and/or employees.  The Newmans have lived in fear of losing their home for eight months, have been held out to the public as deadbeats who do not pay their debts and have been forced to endure the invasion of their privacy and security from repeat trespassers interested in a home auction.  They have avoided leaving their property unattended over concern for trespassers and BOA inspecting and locking them out of their home.

109.    The acts and omissions of the Defendants have caused the Newmans tremendous anxiety, frustration, fear and anger which they never should have been forced to endure.  Mrs. Newman's stress has manifested in lost sleep and episodes of anxiety.  She has also had to watch her husband's condition deteriorate.  The stress of the pending foreclosure has significantly aggravated Mr. Newman's underlying PTSD so much that he has sought counseling to deal with the increased anxiety.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law and pre-and post-judgment interest on any award.

### COUNT 7
**Libel**
**(As to Defendants)**

110.    The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

111.    The Defendants and/or their employees and agents made written statements to third-parties that the Plaintiffs had not paid their mortgage debt, that the Plaintiffs' house was in foreclosure and that their house was scheduled for auction.  These included, but were not limited to, written communications with its employees and contractors that the Plaintiffs had not paid their loan and the house was in foreclosure.  In addition, the Defendants publically disseminated and/or filed statements about the foreclosure and/or auction which resulted in the Plaintiffs

29

house being listed as a foreclosed property in online foreclosure listings, such as http://www.all-foreclosure.com/detail/32399020.htm.

112.    Said written statements were false, the Defendants knew and reasonably should have known the statements to be false and said statements were made with reckless and/or negligent disregard for the truth.

113.    The false and defamatory written statements made by the Defendants BOA, its employees and/or agents caused damage to the Plaintiffs' reputation, good name and honor in their community and before their family and friends.  Moreover, said false and defamatory statements have caused the Plaintiffs fear, anxiety and stress.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law and pre-and post-judgment interest on any award.

## COUNT 8
### Invasion of Privacy
### (As to All Defendants)

114.    The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

115.    The Plaintiffs, as the owners of their home, had a right to privacy in their property and house.  The Plaintiffs had the right to be free from unlawful intrusion onto their property.

116.    The Defendant, its agents, contractors and/or employees held the Plaintiffs out to the public in a false light by representing through their words and actions that the Plaintiffs had a loan and deed of trust with BOA, that the Plaintiffs had not paid their loan and that their home was subject to foreclosure and auction by BOA.  All of these direct or implied representations about the Plaintiffs were false and constituted an invasion of their privacy.  These acts were an unreasonable, substantial and/or serious interference with the Plaintiffs' privacy.

117.    Due to the Defendants holding the Plaintiffs out in a false light, the Plaintiffs property was put on foreclosure listings which has resulted in numerous trespassers coming on their property and interfering with the Plaintiffs right of privacy and sense of security in their home.

118.    The Plaintiffs were damaged as a direct and proximate result of the acts and omissions of the Defendants, their agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

/ / /

/ / /

**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS MATTER**

Dated:   September 14, 2010   .

Respectfully submitted
On behalf of the Plaintiffs,


   /s Floyd W. Bybee
Floyd W. Bybee
BYBEE LAW CENTER, PLC
2473 S. Higley Rd., Ste. 104-308
Gilbert, AZ 85295-3023
480-756-8822
480-302-4186 (fax)
floyd@bybeelaw.com


   /s Joseph F. deMello
Joseph F. deMello
BBO# 546017
LAW OFFICE of JOSEPH F. deMELLO, P.C.
71 Main Street
Taunton, MA 02747
508-824-9112
508-824-5917 (fax)
josephdemellolaw@verizon.net
(seeking *pro hac vice* admission)


   /s Carlin J. Phillips
Carlin J. Phillips
BBO# 561916
PHILLIPS & GARCIA, P.C.
13 Ventura Drive
N. Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 (fax)
cphillips@phillipsgarcia.com
(seeking *pro hac vice* admission)


Attorneys for Plaintiffs